**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

RONDA BEAL,

      Plaintiff,

v.

POLLY J. ALLARD,

      Defendant.

Case No. 17-2112-DDC-GEB

## MEMORANDUM AND ORDER

This matter is before the court on plaintiff Ronda Beal's Motion to Exclude Testimony of

Dr. Van Den Berghe (Doc. 82), whom defendant Polly J. Allard disclosed as a non-retained

expert witness. The court is scheduled to begin trial in this case on November 14, 2018. For

reasons explained below, the court grants plaintiff's motion in part and denies it in part.

At this stage, the court addresses only whether the testimony the parties discuss in their

filings should be excluded. The court does not address the admissibility of the evidence it

declines to exclude in this order because it cannot evaluate the relevance of that evidence.

### I.      Background

This case arises from a collision between plaintiff and defendant's vehicles on April 1,

2015. Defendant filed a Notice of Stipulation of Admission of Fault. This filing concedes

defendant's "legal liability" for the collision. Doc. 50. Plaintiff claims that the collision caused

her to sustain physical injuries requiring surgery and rehabilitation. Docs. 82, 1. This case thus

centers on causation and damages issues that the parties seek to resolve, at least in part, by using

expert witness testimony.

Plaintiff seeks to exclude portions of Dr. Gregory Van Den Berghe's testimony as a non-retained expert witness. Plaintiff asserts that, in the week after the collision, she "complained of shoulder pain and disability" to a chiropractor, Dr. Robert Moore, who suggested she visit an orthopedic specialist. Doc. 82 at 2. Plaintiff represents that she then visited her primary care physician, who ordered an MRI and referred her to Dr. Van Den Berghe. Dr. Van Den Berghe, plaintiff says, "examined her, reviewed the MRI and referred her to an orthopedic oncologist over concern of a potential malignancy in [plaintiff's] shoulder, which turned out benign." *Id.*

Defendant designated Dr. Van Den Berghe as a non-retained expert. At his deposition on January 15, 2018, Dr. Van Den Berghe testified that plaintiff did not inform him that her shoulder was injured during a vehicle collision, and that he had insufficient information to opine about the cause of plaintiff's shoulder injury. Plaintiff does not object to the portions of Dr. Van Den Berghe's testimony that discuss his treatment of plaintiff; she also does not challenge Dr. Van Den Berghe's qualifications. But plaintiff asks the court to exclude the portions of Dr. Van Den Berghe's testimony where defense counsel introduced "records and information unknown to [Dr. Van Den Berghe] prior to the deposition and outside the scope of his care and treatment of Plaintiff." Docs. 82 at 3, 119 at 1.[1] The court understands the challenged records and information to include:

> (1) an article titled, "Principles of Orthopaedic Practice," authored by a physician whom Dr. Van Den Berghe testified he recognized as a prominent scholar on shoulder issues; (2) a book titled, "The Shoulder, Second Edition" by Rockwood and Matsen, which defendant's counsel located in the library of the clinic where Dr. Van Den Berghe practices medicine and was deposed; (3) a book titled, "Priniciples of Orthopaedic Practice," which Dr. Van Den Berghe testified is a recognized text in the orthopedic field; (4) studies of cadavers over the age of 60

[1]    In her Memorandum in Opposition to Plaintiff's Motion to Exclude Testimony of Dr. Van Den Berghe, defendant represents that the parties only dispute the following portions of Dr. Van Den Berghe's deposition testimony:  (1) Page 12, line 17, through page 25, line 10; (2) page 28, line 22, through page 30, line 15; (3) page 33, line 19, through page 40, line 20; (4) page 43, lines 1 through 13; and (5) page 51, line 1, through page 59, line 3.  Doc. 119 at 1.

that indicate the prevalence of rotator cuff tears in the shoulder; (5) a police report from the collision between plaintiff and defendant's vehicles; (6) plaintiff's records from Dr. Robert Moore, the chiropractor plaintiff visited after the collision; and (7) plaintiff's records from the Headache and Pain Center.

In response to several questions from plaintiff and defendant's counsel, Dr. Van Den Berghe testified that he could not "say with any certainty whether or not an accident that occurred on April 1, 2015, had any role in producing any of [plaintiff's] complaints" about her left shoulder. Doc. 82-2 at 39–40, 43–44.

Plaintiff bases her Motion to Exclude on three arguments. She first argues that Dr. Van Den Berghe, as a non-retained expert witness, cannot offer opinions "outside the scope of his . . . treatment of a patient." Doc. 82 at 6. Plaintiff asserts that treating physicians like Dr. Van Den Berghe "are limited to testifying about [information] learned through their actual treatment . . . based on [their] personal knowledge of the examination, diagnosis and treatment." *Id.* at 7. Second, plaintiff contends that because Dr. Van Den Berghe could not opine about the cause of her injury, his testimony fails to meet the requirements for expert witness testimony under Federal Rule of Evidence 702—that is, his testimony "does not assist the trier of fact who is tasked with determining the issue of proximate cause." *Id.* at 12; *see also* Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's . . . knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."). Last, plaintiff argues that Dr. Van Den Berghe's testimony is irrelevant under Federal Rule of Evidence 401 because "he has nothing to offer to the jury regarding causation." Doc. 82 at 12–13.

Defendant responds with three arguments of her own. First, defendant argues that her counsel introduced plaintiff's medical records from earlier treatments to "reinforce[] [plaintiff's] failure to provide [Dr. Van Den Berghe with] an accurate medical history." Doc. 119 at 4–5.

Defendant contends that testimony about the challenged records would "assist the jury through Dr. Van Den Berghe's testimony since [he] was able to contrast [plaintiff's] behavior in the prior records to her conduct during his exam." *Id.* at 5. Defendant represents that the parties have stipulated to these records' foundational requirements under Federal Rule of Evidence 803's exception for records of regularly conducted activities.

Second, defendant contends that Dr. Van Den Berghe testified simply about "general medical [principles]" and "agreed with medical literature located in the doctor's own office" that discussed the prevalence and causes of shoulder injuries. *Id.* at 7. Defendant asserts that Dr. Van Den Berghe, after reviewing records from his examination of plaintiff, testified that plaintiff did not "advis[e] him that her injuries to the left shoulder were caused by a motor vehicle accident." *Id.* at 8. Defendant also contends that Dr. Van Den Berghe based his opinion testimony—really, the absence of an opinion, *i.e.*, that he could not draw a conclusion about the cause of plaintiff's injuries—on his own records from examining plaintiff and his memory.

Third, defendant argues that Dr. Van Den Berghe's deposition testimony imposed no unfair surprise on plaintiff, and that defendant did not seek his testimony in bad faith. Defendant asserts that plaintiff has had sufficient time to "address any concerns about medical literature or records from other health care providers." *Id.* at 9. And defendant represents that her counsel provided plaintiff "relevant medical literature [she] hoped to use" during Dr. Van Den Berghe's deposition—and plaintiff never registered an objection to them. *Id.* at 11. Defendant argues that she is "entitled to introduce any evidence that tends to make plaintiff's theory that the accident was the cause of her left shoulder [injury] less likely to be true." *Id.* at 13. Defendant asserts that Dr. Van Den Berghe's inability to formulate an opinion about the cause of plaintiff's

shoulder injuries is relevant because it "tends to make plaintiff's case of causation less likely to be true." *Id.*

## II.    Legal Standard

The court has a "gatekeeping obligation" to determine the admissibility of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).  When performing this gatekeeping role, the court, when deciding whether to admit expert testimony, has broad discretion. *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (quoting *Orth v. Emerson Elec. Co.*, 980 F.2d 632, 637 (10th Cir. 1992)).

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)  the testimony is based on sufficient facts or data;

(c)  the testimony is the product of reliable principles and methods; and

(d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Supreme Court has described the trial judge's role under Rule 702 in this fashion:

Faced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert*, 509 U.S. at 592–93.

Naturally, the "proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain "the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted). "The most common method for [the court to] fulfill[] this function [of evaluating expert testimony] is a *Daubert* hearing, although such a process is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (citations omitted). Here, neither party has asked for a hearing. And after carefully reviewing the exhibits and the parties' briefing, the court finds that the record presented with their papers furnishes a sufficient basis to decide the motion without a hearing.

## III.    Analysis

"A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." *Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999) (citations omitted). "A treating physician's testimony is based on the physician's personal knowledge of the examination, diagnosis and treatment of a patient, and not on information acquired from outside sources." *Goeken v. Wal-Mart Stores, Inc.*, No. 99-4191-SAC, 2001 WL 1159751, at *2 (D. Kan. Aug. 16, 2001) (correction and citation omitted). The treating physician's opinions about "the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury" are "encompassed in the ordinary care of a patient and do not subject the treating physician" to the requirements applied to a retained expert. *Id.*

"The determinative issue is the scope of the proposed testimony." *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995) ("For example, a treating physician [who is] requested to review medical records of another health care provider in order to render opinion testimony concerning the appropriateness of the care and treatment of that provider would be specially retained notwithstanding that he also happens to be the treating physician.").

Also, "[a] treating physician, even when testifying as a lay witness, may state 'expert' facts to the jury in order to explain his testimony." *Davoll*, 194 F.3d at 1138 (citing 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 701.08 (2d ed. 1999) (noting that a doctor testifying as a lay witness should be given "loose rein to state what are truly facts, even if they are 'expert' facts")). "[T]he trial court has discretion to limit or prohibit a treating physician's opinion testimony which goes beyond information obtained during the physician's care and treatment of the patient, or if the court determines the physician was retained specifically to develop opinion testimony." *Sellers v. Butler*, No. 02-3055-DJW, 2006 WL 2714274, at *3 (D. Kan. Sept. 22, 2006).

Here, the court concludes that some of Dr. Van Den Berghe's statements constitute improper opinion testimony—and thus excludes them. Likewise, other testimony constitutes proper opinion or expert facts. The rest of this order explains the court's reasoning.

The parties divide Dr. Van Den Berghe's testimony into five parts.[2] And the court addresses plaintiff's arguments separately.

In the first aspect of Dr. Van Den Berghe's testimony, he primarily discussed his agreement, or disagreement, with statements taken from medical articles and books. He based

---

[2]    As noted *supra* n.1, the parties dispute only the following sections of Dr. Van Den Berghe's deposition testimony:  (1) Page 12, line 17, through page 25, line 10; (2) page 28, line 22, through page 30, line 15; (3) page 33, line 19, through page 40, line 20; (4) page 43, lines 1 through 13; and (5) page 51, line 1, through page 59, line 3.  Doc. 119 at 1.

this testimony on his experience as an orthopedic surgeon. Doc. 82-2 at 12–21. Dr. Van Den Berghe then testified—but did not appear to opine—about the contents of two sets of documents he had never seen before, but that defendant's counsel had provided him either at or before the deposition: the police report from the collision at issue in this case and plaintiff's chiropractic records from plaintiff's prior medical provider, Dr. Robert Moore. The court declines to exclude this testimony. Assuming it is relevant, plaintiff has not shown—at least not on this motion— that the testimony is improper or inadmissible. It encompasses expert facts and observations about exhibits that defendant's counsel provided Dr. Van Den Berghe. *See Davoll*, 194 F.3d at 1138.

The second disputed portion of Dr. Van Den Berghe's testimony consists of his testimony about the contents of Dr. Moore's chiropractic records. Also, he provided a definition for an abbreviation contained in those records.[3] Doc. 82-2 at 28–30. Plaintiff hasn't shown that this testimony also is improper or inadmissible. Like the first section of the testimony discussed above, this second section also encompasses expert facts and observations about exhibits that defendant's counsel provided Dr. Van Den Berghe. *See Davoll*, 194 F.3d at 1138.

In the third piece of testimony, Dr. Van Den Berghe testified about the contents of records derived from plaintiff's treatment at Headache and Pain Center. Dr. Van Den Berghe testified that these records were not part of his clinical file for plaintiff. Doc. 82-2 at 33–39. As part of this discussion, defendant's counsel and Dr. Van Den Berghe had the following exchange:

> Q. Are you able to state to any reasonable degree of medical certainty or probability, based upon your note that didn't reference a motor vehicle accident and said the initiation of pain was at home, *and then seeing these prior records*, are you able to say with any certainty whether or not an accident that occurred on April 1,

---

[3] Dr. Van Den Berghe testified that the abbreviation "PSIS" stands for "posterior superior iliac spine."

2015, had any role in producing any of the complaints you saw [plaintiff] for for the left shoulder?

. . .

A.  I guess within the scope of my review, no.

*Id.* at 39–40 (Van Den Berghe Dep. 39:20–40:8) (emphasis added).

This exchange required Dr. Van Den Berghe to draw a conclusion based on earlier medical records and a police report that he did not review as part of his treatment of plaintiff. The court excludes this exchange because it constitutes improper opinion testimony based, in part, on information that Dr. Van Den Berghe did not have during his treatment of plaintiff—*i.e.*, plaintiff's earlier records.  *See Goeken*, 2001 WL 1159751, at *2.  But plaintiff has not established that other aspects of this third part of the disputed testimony are improper and inadmissible because, again, it encompasses expert facts and observations about exhibits.  *See Davoll*, 194 F.3d at 1138.  Plaintiff's intervening objection to the question is preserved, leaving plaintiff the option to renew that objection at trial as her counsel sees fit.

This third aspect of Dr. Van Den Berghe's testimony also differs from his testimony in the fourth disputed passage.  In that fourth section, Dr. Van Den Berghe agreed that it was fair to say he "[did not] know of any injuries orthopaedically that [plaintiff] mentioned to [him] [on] July 27, 2015, that [he could] relate to a car wreck that happened April 1, 2015."  Doc. 82-2 at 43 (Van Den Berghe Dep. 43:1–6).  In contrast to his testimony in the third collection of disputes, Dr. Van Den Berghe's opinion here is based on information that plaintiff provided him when he treated her.  Plaintiff hasn't established that this opinion testimony is improper, and thus the court declines plaintiff's request to exclude it.

In the fifth group of disputes about Dr. Van Den Berghe's testimony, he testified about the scope of his treatment—and that by other doctors as well—of plaintiff.  He also clarified the

medical articles and books defendant's counsel had introduced earlier in the deposition. *Id.* at 51–56. But defendant's counsel again asked Dr. Van Den Berghe to provide an opinion about parts of the medical history appearing in others' medical records, as provided to Dr. Van Den Berghe by defendant's counsel:

> Q. Ms. Beal, in the prior records in '03, gave a history of a fall; true?
>
> A. Correct.
>
> Q. That would be a trauma that fits the clinical picture described in this article for single event trauma producing a tear, correct?
>
> A. Yes.

*Id.* at 51–52 (Van Den Berghe Dep. 51:25–52:6). Like Dr. Van Den Berghe's testimony in the third disputed portion of his testimony, this opinion is based on information Dr. Van Den Berghe did not have when he treated plaintiff. *See id.* at 33–34 (noting that the information about plaintiff's fall appears in a 2003 record that was not "in [Dr. Van Den Berghe's] clinical file concerning [plaintiff]"). The court thus excludes defendant's counsel's second question and Dr. Van Den Berghe's response to it in the exchange above because it constitutes improper opinion testimony about plaintiff's earlier medical records based on information that Dr. Van Den Berghe did not have during his treatment of plaintiff. *See Goeken*, *supra*. But the court concludes that plaintiff has not carried her burden for the remaining testimony in the fifth disputed section. She has not convinced the court that this testimony is improper, and the court declines to exclude it on this motion.

This fifth collection of testimony includes two other opinions by Dr. Van Den Berghe. He appears to base both solely on his treatment of plaintiff, and not the external records defendant's counsel showed him:

Q.  If we could go back in time and take your deposition August 4 after your second visit with this patient and ask you are you aware of any information suggesting that an April car wreck caused or contributed to cause these left shoulder complaints, would you have any idea that a car wreck even had occurred?

. . .

A.  I'm not aware of anything in my records that state that.

Q.  . . . And that would have been your opinion and conclusion, absent a history from the patient, you would have said I'm not aware of a car wreck causing these complaints.  Is that a fair statement?

A.  Yes.

*Id.* at 57 (Van Den Berghe Dep. 57:1–19).  In contrast to Dr. Van Den Berghe's testimony relying on plaintiff's medical history that he did not have when he treated her, these two opinions are based on—and confined to—Dr. Van Den Berghe's knowledge from his treatment of plaintiff.  In other words, these statements mirror Dr. Van Den Berghe's proper opinion testimony, as discussed in the fourth group of disputes.

The court thus grants two aspects of plaintiff's Motion to Exclude Testimony of Dr. Van Den Berghe, those found in the third and fifth sections of that testimony.  *See* Doc. 82-2 at 39:20–25, 40:1–3, 40:7–8, 52:3–6.  But the court concludes that the remaining disputed aspects of Dr. Van Den Berghe's testimony encompass either:  (1) proper opinion testimony based on Dr. Van Den Berghe's treatment of plaintiff; or (2) proper "expert facts" based on documents defendant's counsel gave Dr. Van Den Berghe during the deposition.  *See Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999) ("A treating physician, even when testifying as a lay witness, may state 'expert' facts to the jury in order to explain his testimony.").  It thus declines to exclude them based on the current motion.

The court also concludes that Dr. Van Den Berghe's permissible testimony satisfies the threshold standards for admissibility codified in Federal Rules of Evidence 702 and 401.  Rule

702 requires that the expert witness testimony in question "help the trier of fact to understand the evidence or to determine a fact in issue." The court has "broad discretion in deciding whether to admit expert testimony, but should resolve doubts in favor of admissibility." *Am. Family Mut. Ins. Co. v. Techtronic Indus. N. Am., Inc.*, No. 12-2609-KHV, 2014 WL 2196416, at *1 (D. Kan. May 27, 2014) (first citing *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996); then citing Fed. R. Evid. 702 advisory committee's note; then citing *Daubert*, 509 U.S. at 588–89). "[R]ejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable that it would be without the evidence; and (b) the fact is of consequence in determining the action." Similar to its authority under Rule 702, the court has "broad discretion" to make "[d]ecisions on relevance of testimony." *Durflinger v. Artiles*, 727 F.2d 888, 890 (10th Cir. 1984).

Here, the court is persuaded that Dr. Van Den Berghe's testimony could assist the jury's work. As defendant contends, Dr. Van Den Berghe's testimony is intended to challenge plaintiff's theory of causation. Included within his permissible testimony are opinions that he cannot connect his evaluation of plaintiff's injuries to an earlier vehicle collision. Dr. Van Den Berghe also can testify about the differences between plaintiff's prior records and his knowledge of plaintiff's condition during the course of his treatment. The court concludes that, on a proper showing of relevance, these opinions could help the jury understand Dr. Van Den Berghe's examination of plaintiff. They also might assist the jury's efforts to draw conclusions about the cause of plaintiff's injuries based on the opinions of one of her treating physicians.

The court also declines to exclude Dr. Van Den Berghe's testimony as irrelevant under Rule 401. Contrary to plaintiff's arguments that Dr. Van Den Berghe lacks an opinion about the

cause of plaintiff's injuries, this does not necessarily render his testimony immaterial to the jury. Instead, Dr. Van Den Berghe's inability to opine properly could assist the jury's work to decide the probability of facts bearing on the causation of plaintiff's injuries. Erring on the side of admissibility, as our court and the Tenth Circuit consistently have directed, the court declines to conclude, at least on this motion, that Dr. Van Den Berghe's testimony will be unhelpful to the jury or irrelevant to the facts at issue in this case. *See Am. Family Mut. Ins. Co.*, 2014 WL 2196416, at *1; *Kieffer*, 90 F.3d at 1499. The court thus declines to exclude Dr. Van Den Berghe's testimony for these reasons.

## IV. Conclusion

For the reasons explained, the court excludes the portions of Dr. Van Den Berghe's testimony described in the order. But the court concludes that the remainder of the disputed portions of Dr. Van Den Berghe's deposition constitute proper testimony that are relevant and helpful to the trier of fact. The court thus declines to exclude the remainder of Dr. Van Den Berghe's testimony.

**IT IS THEREFORE ORDERED THAT** plaintiff's Motion to Exclude Testimony of Dr. Van Den Berghe (Doc. 82) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 9th day of November, 2018, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**