IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONDA BEAL,

    Plaintiff,

v.

POLLY J. ALLARD,

    Defendant.

Case No. 17-2112-DDC-GEB

## MEMORANDUM AND ORDER

This matter is before the court on defendant Polly J. Allard's Motion to Strike or in the Alternative, Motion in Limine Regarding Testimony of Dr. Larry Frevert (Doc. 121). The court is scheduled to begin trial in this case on November 14, 2018. For reasons explained below, the court denies defendant's motion.

**I.    Background**

This case arises from a collision between plaintiff and defendant's vehicles on April 1, 2015. Defendant filed a Notice of Stipulation of Admission of Fault that concedes "legal liability" for the collision. Doc. 50. Plaintiff argues that the collision caused her to sustain physical injuries that required surgery and rehabilitation. Docs. 82, 1. This case thus centers on causation and damages issues that the parties seek to resolve, at least in part, by using expert witness testimony.

Plaintiff asserts that, in the week after the collision, she "complained of shoulder pain and disability" to a chiropractor, Dr. Robert Moore, who suggested she visit an orthopedic specialist. Doc. 82 at 2. Plaintiff represents that she then visited her primary care physician, who ordered an MRI and referred her to Dr. Gregory Van Den Berghe. Dr. Van Den Berghe, she says,

"examined her, reviewed the MRI and referred her to an orthopedic oncologist over concern of a potential malignancy in [plaintiff's] shoulder, which turned out benign." *Id.* Plaintiff represents that she then "developed adhesive capsulitis," a condition that prompted her to schedule an appointment with Dr. Larry Frevert, an orthopedic surgeon. *Id.* Plaintiff asserts that Dr. Frevert encouraged her to attempt physical therapy but eventually operated on plaintiff's shoulder in December 2015. Doc. 124 at 1.

Defendant seeks to strike the entirety of Dr. Frevert's testimony as a non-retained expert witness. Plaintiff deposed Dr. Frevert on August 23, 2018. First, defendant asserts that the court should strike Dr. Frevert's testimony because it is cumulative of the testimony of Dr. Anne Rosenthal, plaintiff's retained expert witness. In support, defendant only contends that Dr. Frevert's testimony, "on its face," is "nearly that" of Dr. Rosenthal's testimony. Doc. 121 at 4. But defendant provides the court with little additional argument beyond asserting that the court has discretion under the Federal Rules of Civil Procedure to "limit the number of experts on the grounds that the testimony of the experts is cumulative." *Id.* (first citing Fed. R. Civ. P. 16(c)(4); then citing *Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 769 (6th Cir. 1989)).

Second, defendant contends that plaintiff provided Dr. Frevert with documents such as medical records and public records falling outside the scope of Dr. Frevert's treatment of plaintiff. Defendant asserts that, at the deposition, she learned that Dr. Frevert had reviewed these documents. Defendant also asserts that plaintiff produced at the deposition, for the first time, a letter dated March 30, 2017, which listed these external documents and the people or entities who provided them to Dr. Frevert. Defendant represents that the March 30 letter was not produced in response to defendant's discovery requests seeking "any [of plaintiff's] communications with [her] intended experts." Doc. 121 at 2. Defendant also asserts that neither

the March 30 letter nor the documents it describes were produced in response to defendant's subpoena of Dr. Frevert's medical records. She directs the court to Dr. Frevert's testimony that, although plaintiff's counsel provided him with plaintiff's prior medical records, he could not recall which records he had reviewed, and he had not saved those records in his office's electronic medical records system. Docs. 121 at 4–5, 124-2 at 9–10. Defendant represents that plaintiff offered to compensate Dr. Frevert for his time devoted to reviewing the records at issue. Defendant also asserts that Dr. Frevert's response to plaintiff's counsel's letter included a list of other cases where he had testified—a disclosure defendant describes as "an obvious effort to comply with the Federal Rules concerning proper disclosure of retained experts." Doc. 121 at 5. Taken together, defendant argues, Dr. Frevert's testimony and his communication with plaintiff's counsel demonstrate that Dr. Frevert is designated improperly as a non-retained expert witness and is testifying outside the scope of his designation.

In her Response, plaintiff asserts three main arguments opposing defendant's motion. First, she argues that defendant has failed to show how Dr. Frevert and Dr. Rosenthal's testimony are cumulative. Plaintiff contends that Dr. Rosenthal "addresses injury Plaintiff sustained to other parts of the body and corresponding treatment and medical expense not addressed by Dr. Frevert." Doc. 124 at 3. Plaintiff also asserts that because Dr. Frevert operated on plaintiff, "only [he] can testify firsthand what he saw when he opened up Plaintiff's shoulder: 'a very angry reddened joint' caused by acute adhesive capsulitis." *Id.* Plaintiff emphasizes that Dr. Rosenthal did not treat plaintiff and relies only on medical records and other witnesses' testimony.

Second, plaintiff contends that Dr. Frevert's opinion testimony is derived only from "his own records, his knowledge of Plaintiff and the patient history he took." *Id.* at 4 (citing Doc.

124-2 at 13–14 (Frevert Dep. 49:3–13) ("Q. And when you wrote your letter outlining your opinions on either occasion, whether it was April 3, 2017, or later, November 10, 2017, you don't reference any findings in any of these other records; correct? A. No. What she told me was she was doing well and able to do everything she wanted to do prior to the accident. I don't know that I'm interested in something that happened ten years before. I'm interested in what happened in the last six to eight months before this injury.")). Plaintiff argues that any outside records plaintiff's counsel showed Dr. Frevert—*i.e.*, "prior chiropractic records, a very remote prior shoulder MRI, a copy of the police report and photos of the rear of Plaintiff's vehicle"—did not help Dr. Frevert draw conclusions or form opinions. *Id.* at 4–5. Rather, the records "allowed [Dr. Frevert] to decline to offer a causation opinion if he felt [these records] caused him doubt." *Id.* at 5.

Third, plaintiff argues that defendant failed to give plaintiff notice of defendant's challenge to Dr. Frevert's expert designation and disclosures under the deadlines established by the parties' Scheduling Order (Doc. 16). Specifically, the Scheduling Order requires the parties to make objections to expert disclosures within 14 days after service of those disclosures. Doc. 16 at 5. Plaintiff asserts that, although Dr. Frevert's disclosure did not explicitly state that he had reviewed records outside his own chart from his treatment of plaintiff,[1] "Defendant should not

---

[1] Plaintiff's Designation and Disclosure of Expert Witnesses includes the following description of Dr. Frevert's testimony:

> Dr. Frevert is expected to testify regarding the nature, extent and cause of Plaintiff's injuries. He is also expected to testify as to the causal connection between the incident and Plaintiff's injuries, his observations of Plaintiff, his treatment of Plaintiff's injuries, his review of Plaintiff's medical records, the reasonableness and necessity of the medical treatment provided and the reasonableness of the charges for services rendered in connection with Plaintiff's treatment.
>
> . . .

have presumed [Dr. Frevert's] review was confined to his own records." Doc. 124 at 5. Plaintiff also contends that defendant had a second opportunity to object to Dr. Frevert's expert disclosures. In response to her subpoena sent to Dr. Frevert's orthopedic practice, plaintiff argues, defendant received Dr. Frevert's November 10, 2017, letter to plaintiff's counsel on February 12, 2018, stating that Dr. Frevert reviewed "some outside medical records" to form his opinions. Doc. 124-4 at 1–3; *see also id.* at 4 (receipt for production of Dr. Frevert's letter). Plaintiff asserts that because Dr. Frevert's letter explains that he reviewed outside records, defendant should have objected to Dr. Frevert's disclosure as a non-retained expert witness in a timely manner after receiving that letter.

## II. Legal Standard

The court has a "gatekeeping obligation" to determine the admissibility of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). When performing this gatekeeping role, the court has broad discretion. *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (quoting *Orth v. Emerson Elec. Co.*, 980 F.2d 632, 637 (10th Cir. 1992)).

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

---

The grounds for Dr. Frevert's opinions are his personal observations and treatment of Plaintiff as reflected in Plaintiff's medical records and bills, his familiarity with the Plaintiff, history of the patient, and education, expertise and knowledge.

Doc. 124-1 at 2.

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has described the trial judge's role under Rule 702 in this fashion:

> Faced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert*, 509 U.S. at 592–93.

"The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain "the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted). "The most common method for [the court to] fulfill[] this function [of evaluating expert testimony] is a *Daubert* hearing, although such a process is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (citations omitted). Here, the parties do not request a hearing. And after carefully reviewing the exhibits and the parties' briefing, the court finds that this review provides a sufficient record about the parties' competing papers without a hearing.

### III. Analysis

Fed. R. Civ. P. 26(a)(2) requires parties to disclose "the identity of any witness it may use at trial to present [expert witness] evidence." "[I]f the witness is one retained or specially employed to provide expert testimony in the case," the witness must submit a "written report"

6

following the guidelines set out in Fed. R. Civ. P. 26(a)(2)(B). But parties planning to call non-retained expert witnesses need not provide a written report. *Id.* at 26(a)(2)(C). They only must disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." *Id.*

"A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." *Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999) (citations omitted). "A treating physician's testimony is based on the physician's personal knowledge of the examination, diagnosis and treatment of a patient, and not on information acquired from outside sources." *Goeken v. Wal-Mart Stores, Inc.*, No. 99-4191-SAC, 2001 WL 1159751, at *2 (D. Kan. Aug. 16, 2001) (correction and citation omitted). The treating physician's opinions about "the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury" are "encompassed in the ordinary care of a patient and do not subject the treating physician" to the requirements of an expert. *Id.* "The determinative issue is the scope of the proposed testimony." *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995) ("For example, a treating physician requested to review medical records of another health care provider in order to render opinion testimony concerning the appropriateness of the care and treatment of that provider would be specially retained notwithstanding that he also happens to be the treating physician.").

Our court has evaluated challenges to testimony by treating physician witnesses many times. A common challenge to testimony by treating physicians asserts that, with "so much extraneous material . . . there is no possible way they can reasonably be expected to . . . put that material out of their minds and testify to the limited extent of their purported roles as treating

physicians." *Starling v. Union Pac. R. Co.*, 203 F.R.D. 468, 480 (D. Kan. 2001). Our court has rejected such sweeping challenges. *Id.* It has applied, instead, Tenth Circuit precedent "suggest[ing] there is no basis to infer as a matter of law that an expert witness (whether he or she is a treating physician or a retained expert) cannot put aside such material." *Id.* (citing *Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 848 (10th Cir. 1986)).

Here, the court first determines that Dr. Frevert's proposed testimony primarily encompasses his surgery and general treatment of plaintiff. This topic includes plaintiff's physical therapy and communications with her and her counsel about records that Dr. Frevert had received. These documents include other medical providers' records of their treatment of plaintiff, and records from the collision at issue here. Doc. 124-2 at 3–4 (Frevert Dep. 8:6–9:16). But Dr. Frevert's testimony makes clear that he has derived his opinions solely from his treatment of plaintiff—and not on other records he reviewed. *See id.* at 13–14 (Frevert Dep. 48:24–49:13).[2]

To the extent that Dr. Frevert plans to give opinion testimony about these external records, such testimony is prohibited because it exceeds the scope of his designation as a non-

---

[2]   In his deposition, Dr. Frevert testified in response to defendant's counsel's questions:

> Q: . . . You may have been provided records. You don't even know the details, correct?
>
> A: Not at this time, no, sir.
>
> Q: And when you wrote your letter outlining your opinions on either occasion, whether it was April 3, 2017, or later, November 10, 2017, you don't reference findings in any of these other records, correct?
>
> A: No. What [plaintiff] told me was she was doing well and able to do everything she wanted to do prior to the accident. I don't know that I'm interested in something that happened ten years before. I'm interested in what happened in the last six to eight months before this injury.

Doc. 124-2 at 13–14 (Frevert Dep. 48:24–49:13).

retained expert witness.[3] But the court declines to strike the entirety of Dr. Frevert's deposition testimony because, as he has testified, he formed his opinions in this case based on his treatment of plaintiff.

Second, the court concludes that plaintiff's Rule 26(a)(2)(C) disclosures for Dr. Frevert satisfy the standard our court has outlined. This standard requires:

> [a]t a minimum, the disclosure should obviate the danger of unfair surprise regarding the factual and opinion testimony of the non-retained expert. It is not enough to state that the witness will testify consistent with information contained in the medical records or consistent with the testimony given during his or her deposition. Instead, Rule 26(a)(2)(C) disclosures must contain more than a passing reference to the general type of care a treating physician provided. They must summarize actual and specific opinions. The disclosing party should provide 'a

---

[3] The court has some concern about a second portion of Dr. Frevert's deposition testimony, to the extent it may incorporate opinion testimony about external records:

> Q. Now, based on your view of the records we talked about earlier today, including her preexisting records, based on your background, your training and your treatment of Ms. Beal, do you have an opinion one way or the other as to what caused her condition with her left shoulder?
>
> A. What you're looking for is a sudden jolt or jerk from a mechanism of injury. She stated that before the car wreck she really didn't have any of that. The car wreck gave her a sudden jolt on her shoulder. There is a certain amount of energy dissipated someplace in her body. It was dissipated in her shoulder at that point in time from that. It's a good mechanism of injury. Time wise it fits. The pain got a lot worse because the adhesive capsulitis worsens over time. So I think it's a direct result of the car wreck.
>
> Q. And that's an opinion you're able to offer to the jury to a reasonable degree of medical certainty?
>
> A. Yes, sir.
>
> Q. And that's based upon the medical records you reviewed, the photographs you reviewed, and the videotape you reviewed?
>
> A. And talking with the patient.

Doc. 124-2 at 7 (Frevert Dep. 23:10–24:10).

The court reiterates its conclusion: if Dr. Frevert plans to give opinion testimony based on external records provided to him by plaintiff's counsel, this testimony is prohibited because it exceeds the scope of his designation as a non-retained expert witness.

9

> brief account that states the main points' of the entirety of the anticipated testimony. This does not mean that the disclosures must outline each and every fact to which the non-retained expert will testify or outline the anticipated opinions in great detail. Imposing these types of requirements would make the Rule 26(a)(2)(C) disclosures more onerous than Rule 26(a)(2)(B)'s requirement of a formal expert report.

*Yeager v. Buxton*, No. 17-2368-KGG, 2018 WL 4620884, at *3 (D. Kan. Sept. 26, 2018) (quoting *Chambers v. Fike*, No. 13-1410-RDR, 2014 WL 3565481, at *3 (D. Kan. July 18, 2014)).

Here, plaintiff disclosed that Dr. Frevert planned to testify, in part, about "the nature, extent and cause of Plaintiff's injuries" and "the causal connection between the incident and Plaintiff's injuries." Doc. 124-1 at 2. Specifically, plaintiff disclosed that Dr. Frevert would testify that: "1) [a]s a direct and proximate result of the subject accident, Plaintiff suffered injuries to her left shoulder and upper extremity as more specifically described in Plaintiff's medical records; [and] 2) [t]he treatment provided by he and others to Plaintiff was reasonable and necessary at the time and place rendered." *Id.* Dr. Frevert's disclosure provides that his opinions are based on "his personal observations and treatment of Plaintiff as reflected in Plaintiff's medical records and bills, his familiarity with the Plaintiff, history of the patient, and education, expertise and knowledge." *Id.*

Plaintiff's disclosures for Dr. Frevert satisfy the standard our court has adopted for Rule 26(a)(2)(C) disclosures. Dr. Frevert's disclosures extend well beyond "passing reference[s]" to the care he provided plaintiff: these disclosures specifically state that Dr. Frevert intended to opine about plaintiff's shoulder injuries resulting from the collision and about the reasonableness of his treatment. *See Yeager*, 2018 WL 4620884, at *3. They also disclose that Dr. Frevert reviewed the "history of the patient" in forming his opinions.

That plaintiff's counsel provided Dr. Frevert with external documents or offered to compensate Dr. Frevert do not convert him from a non-retained expert to a retained expert subject to more rigorous disclosures and reporting. *See* Doc. 119-5 at 1 (letter from plaintiff's counsel to Dr. Frevert enclosing plaintiff's prior medical records and offering to compensate Dr. Frevert "for [his] time in addressing the issues" plaintiff's counsel raised in the letter). As our court has recognized, "the scope of the proposed testimony" controls the analysis of whether an expert is non-retained or retained. *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995). And our court also has followed the Tenth Circuit's instruction that "no basis [exists] to infer as a matter of law that an expert witness (whether he or she is a treating physician or a retained expert) cannot put aside [external] material" when forming an opinion as a treating physician. *See Starling v. Union Pac. R. Co.*, 203 F.R.D. 468, 480 (D. Kan. 2001) (citing *Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 848 (10th Cir. 1986)). The court thus holds that, to the extent Dr. Frevert's opinion testimony is confined to his treatment of plaintiff, it constitutes permissible testimony from a non-retained expert witness.

Finally, the court declines defendant's invitation to conclude, at least on a pretrial motion, that Dr. Frevert's testimony is cumulative of testimony from plaintiff's retained expert witness, Dr. Rosenthal. Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The court has "discretion to limit the number of experts, provided the witnesses are not excluded arbitrarily, or on the basis of mere numbers." *Green Constr. Co. v. Kan. Power & Light Co.*, 1 F.3d 1005, 1014 (10th Cir. 1993).

Here, defendant has not established on a pretrial motion that Dr. Frevert's testimony is cumulative. As plaintiff argues, Dr. Frevert treated and operated on plaintiff, and he—unlike Dr. Rosenthal—can testify about plaintiff's condition based on personal knowledge. The court is not persuaded by defendant's conclusory assertion that the court should exclude Dr. Frevert's testimony simply because it is "nearly that" of Dr. Rosenthal's testimony. The court thus declines to exclude Dr. Frevert's testimony in its entirety.

## IV. Conclusion

For the reasons explained, the court declines to strike Dr. Frevert's testimony to the extent that his opinions are based on his treatment of plaintiff. The court also concludes that plaintiff has satisfied the standard our court has adopted for Rule 26(a)(2)(C) disclosures. Finally, defendant has not established that Dr. Frevert's testimony is cumulative of the testimony that Dr. Rosenthal, plaintiff's retained expert witness, may offer. For all these reasons, the court denies defendant's motion to strike Dr. Frevert's testimony.

**IT IS THEREFORE ORDERED THAT** defendant Polly J. Allard's Motion to Strike or in the Alternative, Motion in Limine Regarding Testimony of Dr. Larry Frevert (Doc. 121) is denied.

**IT IS SO ORDERED.**

**Dated this 9th day of November, 2018, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**